**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2211-20

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JOSEPH PETERS,

    Defendant-Appellant.

_____

Submitted September 19, 2022 – Decided October 6, 2022

Before Judges Currier and Mayer.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Municipal Appeal No. 20-10.

Joseph Peters, appellant pro se.

Mark Musella, Bergen County Prosecutor, attorney for respondent (Edward F. Ray, Assistant Prosecutor, on the brief).

PER CURIAM

Defendant appeals from the Law Division's January 25, 2021 order

entered after a de novo trial on the record upholding defendant's conviction and

sentence, and the municipal court's denial of defendant's post-conviction relief (PCR) petition. The Law Division found defendant guilty of driving while intoxicated (DWI), N.J.S.A. 39:4-50, and found defendant failed to present a prima facie case of ineffective assistance of counsel to warrant an evidentiary hearing. We affirm.

On October 20, 2017, at approximately 10:45 p.m., Hackensack Police Officer Alexis Mena was on patrol when he received a dispatch call indicating that a 9-1-1 caller reported seeing a heavily intoxicated individual getting into a vehicle. As Mena was looking for the vehicle, he saw a car that fit the provided description. He observed the vehicle was "weaving in and out of traffic," driving erratically, speeding, and changing lanes without signaling. Mena followed the vehicle for approximately five minutes, traveling behind it for "five to six blocks."

Officer Mena testified that he stopped the car but waited for additional officers to arrive before approaching the driver, subsequently identified as defendant. When Hackensack Police Officer Costa arrived at the scene, Mena approached the vehicle and realized it was moving. Mena stated he thought the vehicle was not stopped because defendant had taken his foot off the brake and

did not place the car in park. The officers pounded on the car and defendant eventually put the vehicle in park.

After defendant rolled down the window, Mena smelled liquor "throughout the vehicle" and observed defendant holding a jar of gum and trying to open it. Mena also observed a small bottle of vodka in defendant's center console.

Mena asked defendant for his credentials and described defendant as "fumbling through his wallet," although on cross-examination, Mena said he did not see defendant's hands "fumbling" while he retrieved his credentials. He also noted that defendant was slurring his speech and the smell of alcohol continued to emanate from the vehicle. Mena described defendant's face as "beet red."

Mena testified that during the stop, defendant shouted "this is going to be my third [offense]. I'm going to get arrested. Am I going to get arrested?" Defendant admitted he had consumed some alcoholic beverages that evening. When Mena asked defendant to get out of the vehicle, defendant had difficulty doing so. Mena said defendant was staggering and the officers had to hold him up and assist him to walk to an area where they could administer field sobriety tests. During the tests, Mena observed defendant staggering and almost falling. The officers arrested defendant and transported him to the Hackensack police

station to administer the Alcotest. Defendant had difficulty walking from the patrol car to the interview room.

After the officers realized the Alcotest machine was not working, they transported defendant to the New Milford police station, where they assisted defendant through the front door and brought him to the holding area. An officer then observed defendant for twenty minutes.

After the twenty-minute waiting period, the officers took defendant into another room to administer the Alcotest. The officers removed their equipment, cell phones, and radios and searched defendant. New Milford Police Officer Haggerty administered the Alcotest while Mena remained in the room.

Officer Costa also testified during the trial, confirming he assisted Mena during the traffic stop. Costa observed a small bottle of vodka that appeared to have a broken seal in defendant's car. He recalled defendant telling him he "had two vodkas."[1]

Costa described defendant's eyes as "watery and bloodshot" and his breath smelled of alcohol. During the field sobriety tests, Costa observed that defendant took "an incorrect number of steps," "didn't touch heel to toe," and was "unable to stay in a straight line." Costa stated he had "probable cause to

---

[1] Mena's report indicated that defendant told the officers he had "[t]hree drinks."

4

believe [defendant was] impaired" and concluded that defendant was "impaired to the level that he shouldn't be operating a motor vehicle." While at the Hackensack police station, Costa observed defendant stumbling and saw Mena assist him to prevent defendant from falling.

Officer Haggerty testified that he was summoned to the New Milford police station to administer an Alcotest. He confirmed he observed defendant during the required twenty-minute waiting period.

He testified that he "warm[ed] up" the Alcotest machine and performed certain "checks and balances." He also gave defendant the requisite statement provided by the Attorney General regarding Alcotests. Defendant confirmed that he understood the statement.

Defendant provided two samples. Haggerty performed "checks and balances" and replaced the mouthpiece between the samples. After defendant provided the second sample, the mouthpiece was removed again and the Alcotest went through additional checks and balances, confirmed that it received two sufficient samples, and printed out the alcohol influence report. The report stated defendant's blood alcohol content was 0.13%—which is above the 0.08% legal limit.

Defendant presented Gary Aramini, a DWI consultant, as a witness. He testified regarding the proper administration of an Alcotest, which required the test administrator to wait "at least two minutes" between the taking of samples so all the alcohol from the prior administration of the test can evaporate.

After reviewing the data from the Alcotest report, Aramini testified that there was less than two minutes between the second breath test and the final control test. Therefore, the test was not reliable. However, on cross-examination, Aramini agreed with the prosecutor that the first breath test was performed at 12:37 a.m. and the second breath test was taken at 12:39 a.m., therefore the test was consistent with the standards set under State v. Chun, 194 N.J. 54 (2008).

On April 11, 2018, the municipal court judge found defendant guilty of DWI. The judge further found the Alcotest was properly administered. In addition, the judge accepted the officers' testimony that defendant was under the influence of alcohol, which was testimonial evidence of the observational prong of a DWI offense.

The court sentenced defendant as a second time offender to two years suspension of his license, as well as the imposition of additional sanctions and fines.

A-2211-20

Defendant appealed to the Law Division, asserting the ineffective assistance of counsel during the municipal court trial. The Law Division dismissed the appeal, informing defendant he had to present any PCR petition in the municipal court first. We affirmed. State v. Peters, No. A-1441-18 (App. Div. Jan. 29, 2020) (slip op. at 3-5).

Defendant subsequently filed a PCR petition with the municipal court. The judge found defendant had not demonstrated the requisite ineffectiveness of counsel, stating "the evidence was overwhelming to convict" defendant. The judge noted defense counsel had filed a motion to suppress the traffic stop which was denied prior to the start of trial.

Defendant appealed to the Law Division, where the court conducted a trial de novo on the record. On January 25, 2021, the Law Division judge affirmed defendant's conviction and sentence in a written decision and accompanying order. The judge further found defendant failed to present a prima facie case of ineffective assistance of counsel to warrant an evidentiary hearing. The judge found the Alcotest results were admissible as evidence of his DWI and the test procedure complied with the Chun requirements. Moreover, the court found defense counsel stipulated to the admission of the Alcotest results, the working

order of the Alcotest device, and to Officer Haggerty's Alcotest operator certification.

On appeal, defendant presents the following arguments for our consideration:

POINT I
[THE] LAW DIVISION [ERRED] BY NOT RECOGNIZING DEFENDANT[']S 4TH AMENDMENT RIGHTS VIOLATIONS DUE TO IMPROPER SUPPRESSION HEARING PROCEDURES

POINT II
[THE] LAW DIVISION DID NOT OBJECTIVELY REVIEW THE 14TH AMENDMENT CLAIM OF UNEQUAL PROTECTION WITH USE OR NON USE OF CAMERAS

POINT III
[THE] LAW DIVISION FAILED TO RULE SQUARELY ON THE BLACK AND WHITE FACTS REGARDING ALCO-TEST [CALIBRATION] REQUIREMENTS

A. [THE] ALCO-TEST CERTIFICATION DOCUMENT SUBMITTED AS EVIDENCE DOES NOT MATCH OFFICER WHO CONDUCTED ALCO[TEST]

POINT IV
[THE] LAW DIVISION STATES DEFENDANT DID NOT PRESENT A PRIMA FACIE CASE REGARDING 6TH [AMENDMENT] EFFECTIVE ASSISTANCE OF COUNSEL AND MADE NO RULING ON MUNICIPAL COURT NOT

8

[PERMITTING] POST CONVICTION RELIEF HEARING

POINT V
[THE MUNICIPAL COURT] JUDGE DISMISSED RECKLESS DRIVING [SUMMONS] WHICH SUPPORTS HIS DECISION AT IMPROPER SUPPRESSION HEARING

Our scope of review is limited to whether the findings of the Law Division judge "could reasonably have been reached on sufficient credible evidence present in the record." State v. Johnson, 42 N.J. 146, 162 (1964). The two-court rule provides that appellate courts "should not undertake to alter concurrent findings of facts and credibility determinations made by two lower courts absent a very obvious and exceptional showing of error." State v. Locurto, 157 N.J. 463, 474 (1999) (citation omitted).

We review the Law Division's legal conclusions de novo, without affording any special deference to the "trial court's interpretation of law and the legal consequences that flow from established facts." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). However, we give substantial deference to a trial judge's findings of fact. Cesare v. Cesare, 154 N.J. 394, 411-12 (1998) (citing Rova Farms Resort, Inc. v. Invs. Ins. Co., 65 N.J. 474, 484 (1974)). These findings should only be disturbed when there is no doubt that they are inconsistent with the relevant, credible evidence presented

9

below, such that a manifest denial of justice would result from their preservation. Id. at 412.

We initially address defendant's contentions regarding the Law Division judge's conclusions regarding the municipal court proceeding and then turn to the ineffective assistance of counsel assertions.

Defendant contends the Law Division judge erred in not overturning the municipal court's finding regarding the motion to suppress. He states the municipal court did not employ the proper procedure in handling the motion. As will be discussed, defendant also asserts his counsel was ineffective in not filing a motion. We note the inconsistencies in these arguments.

On the first day of the municipal court trial, prior to any testimony, defense counsel informed the court he had filed a motion to suppress evidence relating to the stop of the motor vehicle. The municipal court judge stated that he had to hear the motion first and then "start all over again" with the trial. Defense counsel responded that it was "up to counsel as to whether we start all over again," although the "preferred method" is to start the trial anew after the suppression hearing.

The court stated that it did not receive defendant's motion to suppress, but it would conduct the hearing beginning with the testimony needed to support the

motion, decide the motion, and then continue with the trial if appropriate. Counsel agreed to this procedure.

Thereafter, Mena testified as described above regarding the events leading up to the stop of defendant's car. When he completed the pertinent testimony, the judge found the stop was constitutional under search and seizure precedent. Defense counsel then agreed to continue with the trial.

In State v. Gibson, 219 N.J. 227 (2014), our Supreme Court held that the "better practice" regarding a motion to suppress and a trial is to "conduct two separate proceedings." 219 N.J. at 245 (reversing the defendant's conviction where he never consented to conducting the suppression motion during trial and defense counsel was never given the opportunity to cross-examine the State's witness). This is preferable because "this procedure underscores the separate nature of each proceeding, the limited scope of a suppression motion, and the different standards of proof governing each proceeding." Ibid.

However, the Court noted that on the infrequent occasions when the motion record is incorporated into the trial record, counsel should be notified in advance, defense counsel must be given the chance to conduct a broad-ranging cross-examination of the State's witnesses, and counsel must consent to the procedure on the record. Ibid.

11

The municipal court proceeding met the Gibson requirements. Defense counsel proposed that the court conduct the motion as part of the trial proceeding. The same testimony was needed to support the suppression motion and the DWI charge. Counsel had the opportunity to cross-examine Officer Mena. After the pertinent testimony was elicited, the court ruled on the motion. Then, both counsel agreed to proceed with the trial. The Law Division did not err in not overturning the conviction on those grounds.

Defendant next argues he was denied equal protection under the Fourteenth Amendment because there was no video recording of the Alcotest administration in the New Milford police department. He further contends the State committed a Brady[2] violation because the video evidence only captures defendant's interactions at the Hackensack police station. The arguments are meritless.

Under Chun, the New Milford police department was not required to record Officer Haggerty's administration of the Alcotest, and a video recording is not one of the three required foundational documents for Alcotest evidence admissibility. 194 N.J. at 145.

---

[2] Brady v. Maryland, 373 U.S. 83 (1963).

Because there was no requirement for the recording of an Alcotest, there could be no failure to disclose any video recording, as it does not exist. And, under Brady and Rule 7:7-7(b)(6), the State is only required to turn over video recording evidence within its custody and control. There was no discovery violation.

We need only briefly address defendant's assertion that the recalibration of the Alcotest was untimely. In Chun, the Court ordered that all Alcotest devices must be inspected and recalibrated every six months, which replaced the prior annual inspection and recalibration program. 194 N.J. at 153.

In establishing a foundation for the admission of the Alcotest evidence, the State provided an Alcotest certificate of accuracy, which certified that the device had been calibrated on March 1, 2017. Defendant argues that the Alcotest device should have been recalibrated on September 1, 2017—50 days before defendant's October 21, 2017 breath test.

Although the Law Division judge acknowledged the Chun recalibration timeframe, he noted that defendant stipulated to the admission of the Alcotest results, the working condition of the Alcotest machine, and Officer Haggerty's certification as an Alcotest operator. Therefore, there was no argument before the court regarding the calibration of the machine. In addition, both the

13

municipal court and Law Division judge found the test was properly administered and the results were admissible.  Neither defendant nor his DWI consultant expert presented any evidence that the fifty-day delay in recalibrating the Alcotest machine had any effect on the results.  We are satisfied the Law Division judge's conclusions "could reasonably have been reached on sufficient credible evidence present in the record."  Johnson, 42 N.J. at 162.

We turn to defendant's assertions regarding the ineffective assistance of counsel.  Defendant contends he received ineffective assistance because his counsel: (1) failed to submit a motion to suppress the automobile stop; (2) failed to review and prepare for trial; (3) failed to subpoena available police digital records; (4) failed to identify the outdated Alcotest calibration; (5) failed to fully understand case law he cited; (6) failed to argue that defendant's stumbling and unsteadiness during the stop and subsequent transport to the Hackensack and New Milford police stations was due to defendant's metal pin and serious "back problem"; (7) failed to review the Hackensack police department videos with defendant; (8) failed to ask for missing video recordings from the Hackensack police department; and (9) failed to challenge the improper certification of the Alcotest operator.

To determine whether trial counsel was ineffective, the United States Supreme Court has adopted the two-prong Strickland v. Washington test. 466 U.S. 668 (1984); see also State v. Fritz, 105 N.J. 42, 49-50 (1987) (adopting the Strickland test).

As to Strickland's first prong, defendant "must show that counsel's performance was deficient." 466 U.S. at 687. This requires a showing that counsel made such serious errors that defendant did not receive counsel as guaranteed by the Sixth Amendment. Ibid. Strickland's second prong requires defendant to demonstrate that counsel's "deficient performance prejudiced the defense." Ibid. Prejudice "must be proved; it is not presumed." Fritz, 105 N.J. at 52. Defendant must demonstrate that counsel's errors "were so serious as to deprive the defendant of a fair trial," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 687, 694; Fritz, 105 N.J. at 52, 60.

Moreover, when a court is determining effectiveness and reasonableness of counsel, judicial scrutiny of defense counsel's performance must be "highly deferential" and the court must provide counsel with a "strong presumption that [their] conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. The reviewing court must give "a

heavy measure of deference to counsel's judgments." State v. Chew, 179 N.J. 186, 205 (2004) (quoting State v. Martini, 160 N.J. 248, 266 (1999)). Thus, defendant "must overcome the presumption that . . . [defense counsel's] challenged action might be considered sound trial strategy." Strickland, 466 U.S. at 689 (internal quotations omitted).

The Law Division judge considered and rejected each of the delineated grounds of ineffective assistance. We agree and affirm the denial of the PCR petition substantially for the reasons set forth in the PCR court's January 25, 2021 order.

As discussed, defense counsel did move to suppress the traffic stop. In considering defendant's claim regarding counsel's trial preparation, the court stated:

> It is clear from the record that counsel was adequately prepared for trial. Counsel thoroughly cross-examined the witnesses and portrayed substantial and accurate knowledge of the facts of the case as well as the DWI subject matter. [Defendant] had failed to specify what further preparations could have been taken to alter the outcome of this case.

We agree that defendant has not shown any deficiency in counsel's trial preparation and has failed to demonstrate what further preparation might have changed the outcome of the trial. Defendant was found guilty of DWI based on

the Alcotest results and defendant's performance of the field sobriety tests. See State v. Tamburro, 68 N.J. 414, 422 (1975) (holding that the defendant's "unmistakable symptoms" of being under the influence was enough to prove he was unfit to operate a motor vehicle and under the influence within the meaning of the DWI statute); see also State v. Zeikel, 423 N.J. Super. 34, 48 (App. Div. 2011) (recognizing that N.J.S.A. 39:4-50 may be proven through observation or by proof of a blood alcohol content of 0.08% or more).

Defendant's assertion that counsel's performance was ineffective because he failed to subpoena digital data, specifically the 9-1-1 call, from the Hackensack police department is also unavailing. The officers' testimony regarding their actions after receiving the 9-1-1 call is consistent. Defendant has not stated how the digital call record would have changed the outcome of the case.

We have already discussed and rejected defendant's contention regarding the recalibration status of the Alcotest. The Law Division judge found the decision to stipulate to the admission of the Alcotest results and the condition of the machine "was simply a matter of trial strategy." Given our high level of deference to counsel's strategy, defendant's argument must fail. See Strickland, 466 U.S. at 689. Defendant has not demonstrated that any of his arguments

17

regarding the Alcotest or its operator would have changed the outcome of the case. To the contrary, even if the Alcotest results were inadmissible, both courts found defendant guilty of DWI under the observational prong of N.J.S.A. 39:4-50(a). See Zeikel, 423 N.J. Super. at 48.

Defendant also contends that defense counsel failed to argue that defendant's stumbling and unsteadiness during the stop and subsequent transport to the Hackensack and New Milford police stations was due to defendant's "metal pin in [his] right knee," his "serious back problem," and his prescribed medication. Given the other proofs presented of intoxication and the Alcotest results, defendant cannot demonstrate a discussion of his medical ailments would have changed the outcome of the proceeding. See Strickland, 466 U.S. at 693.

Because defendant did not present a prima facie case of ineffective assistance of counsel, he was not entitled to an evidentiary hearing. Any arguments not addressed lack sufficient merit for consideration in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2211-20